```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
IN RE ESTATE OF DARIUS MARSHALL,

                    Claimant,                    OPINION AND ORDER
          - v -
                                                 CV-08-2893 (ERK)(VVP)
CITY OF NEW YORK,

                    Defendant.
-------------------------------------------------------------x
```

This matter was referred to me by Judge Korman for a decision concerning the amount of fees to be approved for disbursement to the plaintiff's counsel in this wrongful death action.  The settlement, which produced gross proceeds in the amount of $2.5 million, was approved by Judge Korman and funds have been disbursed to the plaintiff in accordance with the terms of the retainer agreement between the plaintiff and counsel.  The retainer agreement was a standard contingency fee arrangement under which the plaintiff was to receive two-thirds and counsel one-third of the net settlement proceeds, after deductions were made for the reimbursement of costs and expenses incurred in prosecuting the plaintiff's claims.  Upon approval of the settlement, however, Judge Korman indicated that he wished to consider whether counsel should be awarded the full one-third fee provided by the retainer agreement.  Accordingly, he authorized that 20% of the net proceeds of the settlement be distributed to counsel, and that the remaining portion of the one-third fee (i.e. 13 and 1/3 % of the net proceeds) be held in escrow pending a decision on the amount to be approved for counsel.

Under this court's local civil rules, settlements of wrongful death actions are subject to approval by the court, and the approval of an attorney's fee is to be done "in accordance

with the provisions of the New York State statutes and rules." Local Civil Rule 83.2(b)(2). The applicable New York statute concerning the compromise of wrongful death actions is section 5-4.6 of the New York Estates, Powers and Trusts Law, which provides in pertinent part that "the court shall, after inquiry into the merits of the action and the amount of damages proposed as a compromise either disapprove the application or approve in writing a compromise for such amount as it shall determine to be adequate including approval of attorneys fees and other payable expenses." N.Y. Est. Powers & Trusts Law § 5-4.6(a). Under the regulations adopted by the Appellate Division, Second Department, of the New York Supreme Court, in contingent fee cases involving a claim for wrongful death, a fee equal to or less than 33 1/3% of the sum recovered "is deemed to be fair and reasonable." N.Y. Comp. Codes R. & Regs. tit. 22, § 691.20(e)(1) and (2)(v).

At a hearing held on June 13, 2012, one of the attorneys who was active in the representation of the plaintiff provided the court with information concerning the work performed in connection with the representation. Two law firms represented the plaintiff, the Florida firm of Gary, Williams, Parenti, Finney, Lewis, McManus, Watson, & Sperando, P.L., and the New York firm of Rubenstein & Rynecki. Florida counsel were retained initially because they were known to a number of the decedent's relatives who resided in Florida. They in turn engaged New York counsel as local counsel, and New York counsel ultimately provided most of the work in relation to pretrial proceedings. Florida counsel maintained an active role serving as liaison with members of the family, and later became involved with trial preparations as they were designated to serve as trial co-counsel.

Initially, the case required work before the surrogate's court to obtain letters of administration, a matter that was complicated by the fact that the sole distributee of the decedent, his wife of only several months at the time of death, was not a citizen and therefore could not serve as administratrix. New York counsel was active in the initial stages of discovery and other pretrial proceedings, and was named as one of the members of the executive committee charged with guiding the litigation on behalf of the numerous claimants. Counsel thus attended all meetings of counsel, attended all criminal proceedings relating to the accident, and participated in all aspects of discovery involving the plaintiff, which included the filing of a notice of claim, responding to interrogatories, and representing the administrator and the distributee in their section 50(h) hearings as well as their depositions once the matters was set down for trial. Counsel gathered evidence concerning the decedent's claims for pain and suffering, including the events immediately preceding the decedent's death, which was not instantaneous and was witnessed by several survivors. Counsel also gathered evidence concerning the case for lost support, including information about the decedent's salary and benefits. Separate from their work on the plaintiff's claim against the City in this action, counsel conducted the necessary investigations and took the steps to obtain various death benefits owed to the plaintiff from other sources. Finally, once the case was designated as either the third or fourth in line to be tried, counsel began trial preparations in earnest, which included the production of expert disclosures for both an economic expert and a forensic pathologist, as well as the preparation of exhibits and other materials relating to the pretrial order. Ultimately, the action settled days after an advisory

jury issued its verdict in the first trial arising from the ferry disaster at the heart of this action, the damages trial involving the claimant James McMillan.

Although counsel participated in strategic decisions concerning the handling of the liability phase of the litigation, they played no substantial role in the drafting of the summary judgment motion or in the preparation of the trial on submissions which led to Judge Korman's decision denying limitation of liability and finding negligence by the City. They thus did not have to undertake that effort, and received the substantial benefit of a finding of liability that eliminated concerns about whether they would achieve a recovery for the client and ultimately a fee for themselves. That liability would be established in that manner, or at all for that matter, was not known, however, when they commenced their representation. Moreover, counsel will be required to contribute their proportionate share from the fee they receive to the fund established by the attorneys' fee decision entered in this action (unless it is overturned on appeal), and in that way pay for the benefit they have received from the efforts of other counsel. As to the plaintiff's damages, counsel appear to have done work of high quality in gathering the evidence and preparing the case for trial. Their work compares favorably both in quantity and quality with that performed by other counsel in wrongful death actions whose requests for fees amounting to 33 1/3% of net settlement proceeds have been approved. *See Estate of Castro*, dkt. ent. 766 (Nov. 28, 2006); *Osserritta Robinson and Estate of Robinson*, dkt. ent. 888 (June 9, 2008);[1] *see also In re James McMillan v. The City of New York*, 08 CV 2887 (E.D.N.Y. Apr. 8, 2010)(order approving 33 1/3% fee re quadriplegic injury).

---

[1] The docket references are for the docket in 03 CV 6049.

Accordingly, as New York law deems a fee of 33 1/3% of settlement proceeds to be reasonable in contingent fee cases involving a claim for wrongful death, and as such fees have previously been approved in this litigation for work comparable to that performed by counsel here, the request by plaintiff's counsel for approval of a fee totaling 33 1/3% of the net settlement proceeds is hereby granted. Counsel are authorized to release the funds that had been held in escrow pending this decision.

SO ORDERED:

*Viktor V. Pohorelsky*
VIKTOR V. POHORELSKY
United States Magistrate Judge

Dated: Brooklyn, New York
June 19, 2012